UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARL BAUER,

                         Plaintiff,

-vs-                                            Case No.  2:10-cv-508-FtM-29SPC

SOCIAL SECURITY ADMINISTRATION,

                         Defendant.
_____/


## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

        This matter comes before the Court on the Complaint of Plaintiff, Carl Bauer, Seeking

Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying

the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on June 2, 2010.   The case

originated in the Southern District of Florida.   The Plaintiff filed his Motion for Summary

Judgment (Doc. #23) on November 4, 2010. The Commissioner filed the Memorandum of Law

in Support of the Commissioner's Decision (Doc. #24) on January 3, 2011.   Thus, the Motion is

now ripe for review.

        The Undersigned has reviewed the record, including a transcript of the proceedings

before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the

pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff previously filed an application for disability and disability insurance benefits on October 23, 2006, alleging an onset disability date of September 25, 2003. (Tr. 75). The claims were denied initially and upon reconsideration. (Tr. 75). The Plaintiff timely filed a request for hearing. On June 25, 2008, a hearing was held by video before the Honorable Thurman Anderson, Administrative Law Judge (ALJ), in West Palm Beach, Florida. The ALJ issued an unfavorable decision on October 17, 2008. (Tr. 75-84). The Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council on December 22, 2008. (Tr. 7-71). The Appeals Council denied Plaintiff's Request for Review on April 30, 2010. (Tr. 1-4). The Plaintiff has exhausted his administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g).  Joseph Bilotta, an attorney, represents the Plaintiff.

### *Plaintiff's History*

The Plaintiff alleges disability beginning September 25, 2003.  (Tr. 75).   Plaintiff was born on November 26, 1967, and was forty years old when the hearing decision was issued. The Plaintiff has a GED and past relevant work history as a driver. (Tr. 82).   The Plaintiff was involved in a vehicle crash (Tr. 234-44), and alleges disability as a result of the injuries sustained in the vehicle crash.

### *Medical History*

Plaintiff was involved in a severe motor vehicle accident on September 25, 2003, after which he presented to Pembroke Pines Memorial Hospital for medical treatment.  (Tr. 234-44).

He began treating with Craig H. Lichtblau, M.D., in January 2004, and the doctor issued a final narrative report on August 13, 2004.  (Tr. 245-86).  Dr. Lichtblau noted that as of his last evaluation he advised Plaintiff that he should not lift greater than 10 pounds infrequently.  (Tr. 250).  He assigned a 37% permanent partial impairment of the whole person (Tr. 250) and specifically stated "it should be understood that this patient will suffer from acute intermittent exacerbations of chronic pain and discomfort. When he experiences acute intermittent exacerbations of chronic pain and discomfort he will have good days, bad days and missed days of work." (Tr. 251).  Dr. Lichtblau outlined a continuation of care plan which included a possible anterior cervical discectomy and fusion at C4-5.  (Tr. 257).

Stuart B. Krost, M.D. also treated the Plaintiff beginning April 27, 2004. The file contains treatment notes up to November 6, 2007.  (Tr. 358-402, 417-60).  At the initial visit, the doctor noted that Plaintiff was complaining of constant stabbing neck and back pain radiating to both upper extremities and to the left leg.  He was also complaining of numbness and tingling in the left and right hand and interrupted sleep due to pain.  At that time, Dr. Krost limited the Plaintiff to maximum lifting of ten pounds on an occasional basis. (Tr. 417-19).  The Claimant's date last insured is September 30, 2005.  Dr. Krost treated the Plaintiff up through that date on a regular basis.

Dr. Krost was deposed on September 22, 2004.  (Tr. 142-62).  Dr. Krost opined that the Plaintiff sustained multiple trauma including left and right wrist carpel tunnel syndrome, thoracic and cervical disc herniations, a non-union in the right midshaft of the clavicle, right shoulder, tendonitis with impingement and continuing miofacial pain of the cervical lumbar spine. (Tr. 148).  Dr. Krost examined the Plaintiff ten times since the initial April 27, 2004, visit and noted

that he has consistently complained of persistent neck and back pain. Physical examination revealed significant restricted range of motion in the cervical spine with continuing spasm in the cervical and lumbar spine. (Tr. 149).

In his deposition, Dr. Krost also opined that the lifting restrictions would be no more than five pounds on an occasional basis and that the Plaintiff would need to maintain neutral posture without repetitive activities or cervical rotation, lumbar bending, squatting, or crawling. (Tr. 152). Due to his wrist problems, he should avoid repetitive tasks of the hands and avoid activities above the shoulder level. (Tr. 152). Dr. Krost was concerned that Plaintiff might have to work interrupted days at work due to pain. (Tr. 156). Dr. Krost expressed that both he and the Plaintiff had concerns about Plaintiff's driving due to marked restricted range of motion of the cervical spine in addition to his medications, his shoulder pain, his wrist pain, and his lower back pain. (Tr. 157).

The Plaintiff was evaluated and treated by Dr. Rafael Seminario, a psychiatrist, from December 19, 2005, through November 1, 2006. (Tr. 287-304). At the initial visit, Dr. Seminario noted that the Plaintiff had a depressed mood, interrupted sleep, was very emotional, and was having difficulty concentrating. (Tr. 288). The doctor's diagnosis was "major depression, moderate, secondary to the work-related injury of September 25, 2003[,] and chronic pain syndrome associated with medical condition and psychiatric symptoms." (Tr. 290).

The Psychiatric Review Technique Form dated January 2007 from Martha Putney, Ph.D., indicated that Plaintiff was suffering from mild restrictions of activities of daily living, mild difficulties of maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace. (Tr. 316). The Residual Physical Functional Capacity Assessment Form

of Shannon Smith, M.D., indicated the subjective and objective evidence presented was consistent with the medically determined impairment and their effect on the Plaintiff's ability to function.  Dr. Smith agreed with Dr. Krost's assessment that Plaintiff would be able to perform non-repetitive sedentary work with the maximum lifting weight of five pounds.  (Tr. 326).

The Physical Residual Functional Capacity Assessment Form of Dr. Thomas Penney indicated that the Plaintiff was limited to lifting ten pounds occasionally and less than ten pounds frequently.  (Tr. 343).  Medical records through September 20, 2005, report a history of bilateral wrist injuries, carpal tunnel, morbid obesity, mild facial pain, and depression along with cervical disc herniations, decreased lordotic curve and trigger points.  (Tr. 343).

### *Administrative Law Judge's Decision*

The ALJ observed that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2005.  (Tr. 77).  Based on the medical evidence of record, the ALJ found Plaintiff had severe impairments of non-union clavicle, herniated nucleus pulposus (HNP) in the cervical and thoracic spine, obesity, and depression.  (Tr. 77). He found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.  (Tr. 78).  The ALJ found that through the date last insured, Plaintiff had the residual functional capacity (RFC) to perform a wide range of sedentary work or work which is generally performed while sitting and never requires lifting in excess of 10 pounds.  (Tr. 80). The ALJ found that the evidence supported a finding that Plaintiff could lift and carry less than 10 pounds on a regular basis and 10 pounds on an occasional basis.  (Tr. 80).  Plaintiff could sit 6 hours in an 8-hour workday and stand/walk 2 hours in an 8-hour day, and could not drive.  (Tr. 80).   Plaintiff could never climb

ladders/ropes/scaffolds, or work in high exposed places or around other hazardous conditions. (Tr. 80). The ALJ found that Plaintiff had limited pushing/pulling in the upper and lower extremities.   (Tr. 80). Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. 80). Plaintiff required the ability to sit/stand when needed.  (Tr. 80). He was able to perform simple routine, competitive, low stress, repetitive tasks on a sustained basis over a normal 8-hour workday, in a stable work environment, no more than simple decision making, no significant close interpersonal interactions with coworkers or the public, unable to perform complex and detailed tasks or to meet fast paced, high production demands.  (Tr. 80). With this RFC, the ALJ found Plaintiff could not perform his past relevant work.  (Tr. 82).

However, based on testimony from a vocational expert witness in response to a hypothetical question that fully set out Plaintiff's abilities and limitations, the ALJ found that there was other work existing in significant numbers in the national economy which Plaintiff could perform.  (Tr. 83). Therefore, the ALJ found Plaintiff not under a disability at any time from the alleged onset date of September 25, 2003, through September 30, 2005, the date last insured.  (Tr. 84).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence.  Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)).  In evaluating whether a claimant is disabled, the ALJ must

follow the sequential inquiry described in the regulations.[1]   20 C.F.R. §§ 404.1520(a),

404.920(a).   The Commissioner's findings of fact are conclusive if supported by substantial

evidence.   42 U.S.C. § 405(g).   "Substantial evidence is more than a scintilla—*i.e.*, the evidence

must do more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the conclusion."

Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)

(citing Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982)); Richardson, 402 U.S. at

401.

Where the Commissioner's decision is supported by substantial evidence, the District

Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004).   The District Court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable to the

decision.   Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)

(holding the court must scrutinize the entire record to determine reasonableness of factual

findings).

---

[1]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

*Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

*Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

*Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

*Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

*Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the case.  42 U.S.C. § 405(g)(sentence four).  The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511. To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states the case should be remanded to the Commissioner due to the following errors: (1) the ALJ failed to consider any evidence from the Plaintiff's treating physician and improperly concluded that there was no evidence existing prior to the Plaintiff's date last insured; (2) the ALJ improperly found that the Plaintiff is not disabled despite concluding that Plaintiff cannot perform a full range of sedentary work; (3) the ALJ improperly rejected Plaintiff's testimony regarding his subjective pain complaints, and; (4) the ALJ failed to consider the Plaintiff's non-exertional impairments, restrictions placed by Dr. Krost, and/or the vocational expert's testimony regarding the effect of such impairments on Plaintiff's employability.   The Commissioner argues the ALJ's decision was based upon substantial evidence and should be affirmed.

*(1) Whether the ALJ Failed to Consider Any Evidence from the Plaintiff's Treating Physician and Improperly Concluded That There Was No Evidence Existing Prior to the Plaintiff's Date Last Insured*

While substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise, (Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991); 20 C.F.R. § 404.1527(d)), the ALJ may discount a physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.   Natale v. Commissioner, 2008 WL 227957 *6 (M.D. Fla. Jan. 25, 2008).   When a physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other

factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).  There is no support for a contention that the opinion of a non-treating medical expert should be evaluated any differently than opinions of other physicians.  Id.  Furthermore, the weight afforded a physician's opinion depends upon the extent by which it is supported by clinical or laboratory findings and is consistent with other evidence in the record.  Wheeler v Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory.  Edwards v. Sullivan, 937 F.2d 580, 585 (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Opinions on some issues, such as whether a claimant is disabled and the claimant's RFC, "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(e). Statements from acceptable medical sources about what a claimant can still do are relevant evidence, but they are not determinative, as the ALJ has the responsibility of assessing a claimant's RFC.  See 20 C.F.R. § § 404.1527, 404.1545, 404.1546(c).

Plaintiff claims that the ALJ erred in the manner in which he evaluated the evidence from Dr. Stuart Krost, who opined that Plaintiff is unable to return to work. (Pl. Br. at 7). Plaintiff argues that the ALJ incorrectly stated in his order that there were no notes from Dr. Krost prior to 2006. (Pl. Br. at 7). This is not the case, Plaintiff argues, because Dr. Krost treated him in 2004 and 2005, the period under consideration by the ALJ. (Pl. Br. at 2-3, 7). However, Dr. Krost's treatment records (Tr. 417-460) and deposition testimony (Tr. 140-162) were not presented to the ALJ and, thus, were not available to the ALJ for his review. (Tr. 4, 5-71). The notice of denial of review from the Appeals Council indicates that Plaintiff did not submit the 2004 and 2005 records from Dr. Krost or Dr. Krost's deposition until after the ALJ had issued his decision and Plaintiff had requested Appeals Council review. (Tr. 4).

According to Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007), when a plaintiff submitted additional evidence to the Appeals Council and argues to the Court that the Appeals Council erred in denying review, a district court must determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole. See Hummel v. Astrue, No. 8:06-cv-725-T-EAJ, 2007 WL 2492460, at *7 (M.D. Fla. 2007) (under Ingram, the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council).

Plaintiff argues that the only evidence the ALJ reviewed and relied on was an opinion from Dr. Lichtblau and that, even then, the ALJ relied on only a portion of Dr. Lichtblau's opinion that the claimant was able to perform sedentary work. (Pl. Br. at 7-8). The ALJ did give great weight to Dr. Lichtblau's opinion because it was consistent with Plaintiff's record as a

whole and was substantiated by the evidence in the record that related to treatment through September 30, 2005, the date last insured.  (Tr. 81).

The ALJ noted that Dr. Craig Lichtblau submitted an excellent narrative report on August 13, 2004, that outlined Plaintiff's treatment record to that time.  (Tr. 81, 245-51). The ALJ noted that Dr. Lichtblau reported that Plaintiff was involved in a work-related auto accident while driving a milk truck on September 25, 2003.  (Tr. 81, 247). He observed that Plaintiff sustained injuries to his back, head, shoulder, and neck.  (Tr. 81, 247-48). The ALJ observed that Plaintiff was referred to an orthopedist who ordered a CT scan which was negative.  (Tr. 81, 247). The ALJ noted that Plaintiff underwent outpatient physical therapy that he stated gave him moderate pain relief. (Tr. 81, 247). Plaintiff also sustained injuries to his left wrist and EMG/nerve conduction studies showed bilateral carpal tunnel syndrome.  (Tr. 81, 248).

The ALJ noted that Dr. Lichtblau reported that he initially saw Plaintiff on January 8, 2004.  (Tr. 81, 248). Plaintiff was complaining of neck and mid back pain, left shoulder pain, and bilateral wrist pain (Tr. 81, 248). Dr. Lichtblau reported that his assessment of Plaintiff's condition at that time was: (1) cervical, thoracic and lumbar myofascial pain syndromes, secondary to injuries sustained in the work related motor vehicle accident in September 25, 2003; (2) impingement syndrome of the left shoulder; (3) bilateral carpal tunnel syndrome; and (4) rule out HNP of the cervical and thoracic spine.  (Tr. 81, 248). The ALJ observed that an MRI done on Plaintiff's cervical spine on January 13, 2004, showed a disc herniation at C4-5, and a MRI of the thoracic spine showed disc herniation at C3-4.   (Tr. 81, 249). The ALJ observed that Plaintiff continued to complain of chronic pain and on March 22, 2004, Dr. Lichtblau reported that a lumbar MRI done on March 5, 2004, was normal.  (Tr. 81, 253, 263).

Dr. Lichtblau related that Plaintiff had seen a surgeon who did not recommend any surgery to his back, shoulder, or neck.  (Tr. 81, 250, 262).

Dr. Lichtblau reported that it was his medical opinion that Plaintiff had reached Maximum Medical Improvement and had a 37% permanent partial impairment of the whole person according to the 1996 Florida Uniform Impairment Rating Schedule.  (Tr. 81, 250, 254). Plaintiff was advised to continue working at the sedentary level with no lifting greater than 10 pounds.  (Tr. 81, 264). Plaintiff underwent an AMA Impairment Rating on August 13, 2004. (Tr. 81, 253). The ALJ found that Dr. Lichtblau's treatment notes consistently reported that Plaintiff was capable of performing sedentary work activity.  (Tr. 81, 264, 268, 271, 274, 283). Thus Dr. Lichtblau's opinion was consistent with Plaintiff's record as a whole and was substantiated by the evidence in the record that related to treatment through September 30, 2005, the date last insured.  (Tr. 81).

Although Plaintiff presented additional evidence from Dr. Krost to the Appeals Council, this additional evidence would not have overcome the ALJ's decision to give great weight to the opinion of Dr. Lichtblau. For example, despite the statements of Dr. Krost's deposition, in a number of the treatment records from the period under consideration, Dr. Krost said that Plaintiff could perform sedentary work.  (Tr. 423-29). Dr. Krost also had a number of notations in which he stated that Plaintiff was unable to drive until a driver's evaluation or a neurological evaluation for surgical options was done.  (Tr. 429-34, 436-41, 443-49, 452-53).  However, in his RFC determination, the ALJ restricted Plaintiff from driving.  (Tr. 80).  Therefore, the ALJ's RFC determination was consistent with this particular restriction.

The additional new evidence from Dr. Krost which was related to the period under consideration included his recommendation that "[t]his patient is able to drive short distances and for short periods of time. He had try (sic) sedentary job with maximal lifting of 5 pounds. He should avoid repetitive tasks of the upper extremities; may require intermittent rest periods; can return to part time and progress to full time with time." (Tr. 454, 456, 458, 460). Although this evidence was never presented to the ALJ, it does not change the fact that the ALJ's determination was based on substantial evidence of record. This opinion from Dr. Krost seems to indicate that Plaintiff could return to sedentary work activities. (Tr. 454).

Additionally, the evidence from the state agency reviewing physicians indicated that Plaintiff could perform a wide range of sedentary work activities consistent with the RFC determination. (Tr. 82, 342-57). Although not accorded the same controlling weight or deference as the opinions of treating physicians, the findings of the state agency medical consultants regarding the nature and severity of Plaintiff's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review. See Social Security Ruling (SSR) 96-6p. Thus, the findings of the state agency medical consultant provide additional evidence to support the ALJ's findings. Id.; Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (noting that the current regulations permit the opinions of non-examining sources to override treating sources' opinions if they are supported by the record) (cited in Satellite Broadcasting and Communications v. Oman, 17 F.3d 344, 348 n.8 (11th Cir. 1994)).

The ALJ's determination that Plaintiff was capable of performing a wide range of sedentary activities was supported by substantial evidence of record. Although Plaintiff

submitted additional evidence to the Appeals Council from Dr. Krost, this new evidence would not out-weigh the evidence of record from Dr. Lichtblau and the contemporaneous MRI and other clinical testing which supported the ALJ's determination.  This Court concludes that the ALJ thus properly considered all the medical evidence available to him at the hearing.

### (2) Whether the ALJ Properly Observed that the Medical Vocational Guidelines Would Direct a Finding of Not Disabled

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Augusto v. Commissioner of Social Security, 2008 WL 186541 *7 (M.D. Fla. Jan. 18, 2008) (citing Foote, 67 F.3d at 1558).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir.1989). This burden may sometimes be met through exclusive reliance on the grids.  Augusto, 2008 WL 186541 at *7.  Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Augusto, 2008 WL 186541 at *7 (citing Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed.2d 66 (1983) (holding exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Augusto, 2008 WL 186541 at *7 (citing

Walter v. Bowen, 826 F.2d 996, 1002-3 (11th Cir.1987)).   In almost all of such cases, the Commissioner's burden can be met only through the use of a VE.   Augusto, 2008 WL 186541 at *7 (citing Foote, 67 F.3d at 1559).   It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy.   Augusto, 2008 WL 186541 at *7.   In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.   Id. (citing Foote, 67 F.3d at 1559).

Commissioner and Plaintiff agree that because the ALJ found that Plaintiff could not perform a full range of sedentary work, the Medical Vocational Guidelines (grids) would not be appropriate to direct a finding of "not disabled."  (Comm'r Br. at 12; Pl. Br. at 8).   The ALJ appropriately did not use the grids to determine that Plaintiff was not disabled (Tr. 83), but rather simply used them as a framework.  (Tr. 83).   The ALJ relied on testimony from the vocational expert (VE), Howard Feldman, who testified at the hearing.   The vocational expert testified that even with the RFC determination provided by the ALJ, there was still other work existing in significant numbers in the national economy which Plaintiff was able to perform.  (Tr. 83-84, 103-04).   The ALJ noted that the VE testified that Plaintiff would be able to perform the jobs of telephone solicitation, 750,000 national jobs; and bench work, 1,000,000 national jobs.  (Tr. 83).   As the ALJ specifically stated, "Based on the testimony of the vocational expert, the undersigned concludes that the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (Tr. 84).

This Court finds the ALJ properly relied on the vocational expert's testimony.  As such, the ALJ's decision was based on substantial evidence in the record.

### (3) Whether the ALJ Properly Evaluated Plaintiff's Credibility

The claimant bears the burden of proving she was disabled within the meaning of the Social Security Act.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). When a claimant attempts to establish disability based on her subjective complaints, the claimant must satisfy the Holt Pain Standard.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); 20 C.F.R. § 404.1529. In this three-part test, the claimant must show: "(1) evidence of an underlying medical condition and (2) either (a) objective medical evidence confirming the severity of the alleged pain [or other symptoms]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain [or other symptoms]."  Holt, 921 F.2d at 1223.

Once the claimant establishes an underlying physical or mental impairment could be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work.  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); S.S.R. 96-7p. When evaluating intensity, persistence, and limiting effects of the symptoms:

> Statements about [claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled; there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [the claimant is] disabled.

20 C.F.R. § 404.1529(a). The ALJ is to consider "all available evidence, including objective medical evidence, such as medical signs and laboratory findings, statements of the claimant and others about the claimant's symptoms, the medical opinions of treating physicians and non-treating physicians, and evidence of how the pain affects the claimant's daily activities and ability to work." May v. Comm'r of Soc. Sec. Admin., 226 Fed.Appx.955, 958–59 (11th Cir. 2007); 20 C.F.R. § 404.1529(a).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote v. Chater, 67 F.3d 1553, 1561–62; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th

Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

In this case, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. 82). However, the ALJ also found that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment prior to Plaintiff's date last insured.

The ALJ relied heavily on the narrative report of Plaintiff's physician, Dr. Lichtblau. (Tr. 245-86). The ALJ gave great weight to this opinion because it is consistent with the Plaintiff's record as a whole and is substantiated by the evidence (or lack thereof) in the record that relates to treatment through September 30, 2005. (Tr. 82). He found that while the evidence in the record may report a worsening in Plaintiff's condition, the record further reflected that Plaintiff's treatment and medication were generally successful in relieving the symptoms to the point that Plaintiff was found to be able to perform sedentary work activity. (Tr. 82, 264, 268, 271, 274, 283).

The ALJ noted that although Plaintiff had received treatment for the allegedly disabling impairments, that treatment had been essentially routine and/or conservative in nature. (Tr. 82, 250, 262). For example, the ALJ noted that surgery was not recommended for Plaintiff. (Tr. 82, 250, 262). Additionally, the ALJ observed that the interviewer for the Administration noted that Plaintiff had no problems with hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, seeing, using his hands, or writing. (Tr. 82, 172-74). The ALJ therefore found that although Plaintiff may have had some restrictions, the totality of the

evidence in the record did not show that Plaintiff was precluded from all types and degrees of work activities.  (Tr. 82). Rather, the ALJ found that the evidence showed that Plaintiff was still able to perform a wide range of sedentary exertional activities.   (Tr. 82).

The ALJ further relied on the opinions of the State Agency medical consultants provided at the reconsideration and initial levels.  He found that they provided specific reasons for their opinions about the Plaintiff's residual functional capacity, showing that the opinions were grounded in the evidence in the case record, including careful consideration of the Plaintiff's allegations about his symptoms and limitations.  The ALJ found that evidence received into the record after the reconsideration determination did not provide any new or material information that would alter any findings about the Plaintiff's residual functional capacity prior to his date last insured.

This Court finds the ALJ properly applied the <u>Holt</u> Pain Standard, and considered all pertinent and relevant evidence necessary to make his finding that the Plaintiff failed to provide sufficient evidence to support his claims of disabling symptoms and limitations. This Court finds substantial evidence supports the ALJ's findings as they apply to the Plaintiff's credibility.

### *(4) Whether the ALJ Properly Considered Plaintiff's Non-Exertional Impairments and the Vocational Expert's Testimony Regarding the Effect of Such Impairments on Plaintiff's Employability*

Plaintiff claims that the ALJ failed to properly consider the vocational expert's opinion regarding the Plaintiff's non-exertional impairments and the restrictions in place per Dr. Krost. (Pl. Br. at 10).  Plaintiff argues that the ALJ erred when he failed to provide a hypothetical to the vocational expert, which included chronic pain, prolonged prescribed narcotic use, difficulty concentrating, anxiety, and sleep and fatigue issues.  (Pl. Br. at 10).  Although Plaintiff argues

that the ALJ should have included additional limitations in his hypothetical question, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004.

In response to the hypothetical posed by the ALJ, the vocational expert identified examples of jobs that an individual with Plaintiff's vocational characteristics could perform. (Tr. 103-04). The ALJ included these in his decision. (Tr. 83-84). The vocational expert testified that Plaintiff could not perform his past relevant work, but that there were other jobs in the national economy which Plaintiff could perform, including telephone solicitation and bench work. (Tr. 104).

Plaintiff failed to prove that he could not perform the jobs cited by the vocational expert and the ALJ. See Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999) (holding that a claimant must prove that she is unable to perform the jobs listed by the Commissioner). This Court thus finds that substantial evidence thus supports the ALJ's conclusion that Plaintiff could perform other work and was not disabled within the meaning of the Social Security Act.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED**:

Plaintiff's Motion for Summary Judgment (Doc. #23) should be **DENIED**. The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this  10th  day of February, 2011.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record